No. 13,748.

State ex rel. A. Brittin vs. City of New Orleans.

| 106 | 469 |
| 108 | 120 |
| 106 | 469 |
| s109 | 111 |
| s109 | 694 |
| 106 | 469 |
| 123 | 865 |

Syllabus.

1. The receiver having been appointed at the instance of the city of New Orleans for the stated purpose of closing this litigation, and having as yet taken no steps towards accomplishing that purpose, the city of New Orleans is not in a position to say that the litigation is terminated and that the receivership is not necessary.

2. There being debts of the defunct corporation, and also assets, subject to be reduced to possession and distributed to the creditors, a receivership would seem to be necessary.

3. The receiver of a defunct corporation that owes debts and has assets should be clothed with the power to reduce to possession and to distribute to the creditors all the assets of the corporation of which he is receiver, to be found within the jurisdiction of the court that has appointed him.

4. The taxes imposed in the years 1869 to 1876, both inclusive, for the use of the late corporation known as the Board of Metropolitan Police, constitute one fund, out of which the warrants and certificates issued by the said Board are entitled to be paid indiscriminately.

5. The powers of a receiver may be enlarged on his own motion, or even on the court's own motion.

APPEAL from the Civil District Court, Parish of Orleans.— Theard, J.

*Charles Louque,* for L. H. Hubert, Receiver, Plaintiff, Appellee.

*Samuel L. Gilmore,* City Attorney, and *Frank B. Thomas,* Assistant City Attorney, for Defendant, Appellant.

The opinion of the court was delivered by

PROVOSTY, J. This is an appeal from an order granting enlarged powers to the receiver heretofore appointed to have charge of the affairs of the defunct corporation known as the Board of Metropolitan Police.

In 1868 the Legislature created a Metropolitan Police District, and placed the government and control thereof in a Board known as the Board of Metropolitan Police. Said act and the acts supplementary thereto required said Board to make annually an estimate of the expense of maintaining a police force in said district, and to apportion the same to the several cities and parishes within said district; and required said cities and parishes to provide the means for promptly paying the amounts thus apportioned to them. The City of New Orleans was one of the cities within said district. Under the apportionments made for the years 1869, 1870, 1871, 1872, 1873, 1874, 1875, and 1876, the amount payable by the City of New Orleans was approximately $800.000 per year. The said Board went out of existence in 1877, leaving a large outstanding indebtedness represented by warrants issued to policemen, etc., and large claims against the city for amounts due under the yearly apportionments; which amounts had thus remained unpaid because of the non-collection of the taxes imposed to meet the payments.

The present suit of State *ex rel.* A. Brittin vs. City of New Orleans, was instituted in 1877. The relator alleging himself to be the holder of warrants issued by the said defunct Board for salaries of policemen for the month of November, 1876, to the amount of $9,842.65, and that the city had collected and had on hand $26,000 of the funds provided by law for paying said warrants, prayed for a *mandamus* to the city to pay the said debt out of the said fund. The order for *mandamus* was signed by the judge, but was not further acted on. A month later the same relator filed a supplemental petition in which he prayed for the appointment of a receiver upon the following allegations, to-wit: That the city had collected the taxes imposed for the use of the said defunct Board, and that there was no existing law by

which she could pay same to the creditors of said defunct Board; that he was interested as a holder of certificates of indebtedness of the said Board in the distribution of the accrued and accruing collections made and being made of said taxes; that the said fund so received, exceeding $10,000, was claimed by divers parties, and that in order to preserve the said fund for the interest of all parties concerned, and to insure the receipt of the taxes properly applicable to said fund, and to make proper distribution thereof, a receiver should be appointed to take and receive the taxes collected as aforesaid for the years 1874, 1875 and 1876, and the taxes hereafter to be collected for the same years. The City of New Orleans informally consented to the appointment of the receiver and he was accordingly appointed.

The prayer was that the receiver should be authorized to demand and receive the amounts collected on the taxes of the years 1874, 1875 and 1876; and the appointment was made according to the prayer. Why the powers of the receiver were thus restricted to three out of the eight years for which taxes were imposed does not now appear.

The receiver brought suit against the City of New Orleans on her liability to account for these taxes of 1874, 1875 and 1876, and recovered judgment for some $30,000. This amount he distributed *pro rata* to the creditors, after satisfying privileged claims. Afterwards he applied to the court for an enlargement of his powers, so as to enable him to demand of the city the collections of the taxes of the other years. The court made an order granting the application. Shortly afterwards the receiver died, and a number of creditors applied for the appointment of a successor with the same enlarged powers, and the appointment was accordingly made. This granting of enlarged powers and this appointing of a successor to the late receiver had been done *ex parte,* without notice to the City of New Orleans. On this ground of want of notice the city caused the order to be set aside. This was in May, 1891.

In this condition matters remained until December, 1899, when the city herself applied to the court for the appointment of a successor to the late receiver. In the application it was stated that the appointment was asked to be made "for the purpose of closing this litigation." Accordingly the present receiver was appointed; and the present application for enlarged powers is his first act towards closing the litigation, except that in October, 1900, a suit was filed against him by a Mrs. Begue, a holder of warrants of the late Board, and judgment was rendered against him for some $5,000.

This application for enlarged powers was made and was granted contradictorily with the city. The prayer of the receiver is that his powers be so enlarged as to enable him to demand of the city and receive the amounts collected on the taxes imposed for all the years during which taxes were imposed for the use of the defunct Board.

The city having herself provoked the appointment of this receiver, is not in a position to say that the litigation has terminated and that a receiver is not necessary to wind up the litigation; and since there is a receiver, it is obvious that he should have all necessary powers to reduce to possession the assets that the receivership may be entitled to claim and receive. The city cannot deny that there are such assets, nor that there are debts of the defunct Board still outstanding, nor that she is liable to an accounting for the taxes in question. Because heretofore an amount has been recovered and distributed, is no reason why all other amounts that may be due should not be in like manner recovered and distributed. We think, therefore, that the enlarged powers were properly granted.

Warrants of the defunct Board are not limited for their payment to the taxes of the years during which they were issued; but may come against the taxes of any of the years during which taxes were imposed; in other words, the taxes of the several years from 1869 to 1876, inclusive, constitute one fund out of which the warrants of the defunct Board are payable. This point was settled by the decision of this court in the cases of Fischer vs. School Directors, 44th Ann. 187; 45 Ann. 342.

The powers of a receiver may be enlarged on his own application, or even on the court's own motion. A. & E. Ency., Vol. 20, p. 88.

It is therefore ordered, adjudged and decreed, that the judgment herein be affirmed at the cost of the appellant.